IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WESTMORE EQUITIES, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-0241-MJR-DGW |
| | ) |
| VILLAGE OF COULTERVILLE, | ) |
| | ) |
|     Defendant/Third Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MORAN ECONOMIC DEV., LLC, | ) |
| | ) |
|     Third-Party Defendant. | ) |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

### A. Introduction

Having already summarized this matter a considerable number of times, the Court will spare the parties a full recitation of the facts and briefly summarize the important details. In 2010, Westmore Equities, LLC ("Westmore"), representing the interests of the retail chain Dollar General, Inc., contacted the Village of Coulterville ("Village") President Scott Rust ("Rust"). Westmore indicated that they wanted to bring a Dollar General store to the Village, and noted that a Tax Increment Finance ("TIF") district would assist in that process. Rust spoke to the Village Board of Trustees ("Board") and ultimately contacted Moran Economic Development, LLC ("MED"), seeking assistance as to how to set up a TIF district to lure Dollar General to the Village.

The Village and MED entered into a contractual agreement (the "MED Contract"), wherein MED would draft the necessary contracts and resolutions to be enacted by the Village.

This included a contract between Westmore and the Village entitled the "Redevelopment Agreement," detailing the role each would have in the development of land within the TIF area, including the future Dollar General store. After the enactment of several ordinances by the Village Board to establish the necessary TIF area, financing, and a redevelopment plan, MED instructed Rust to execute the Redevelopment Agreement on behalf of the Village, though without a separate Ordinance detailing the Board's approval of the action.

The Redevelopment Agreement is the subject of the underlying matter in this case, wherein Westmore seeks a declaratory judgment that it is valid and enforceable, despite the lack of further approval by the Village Board (Doc. 1). The Village claims that the Redevelopment Agreement is not binding on the Village, as it was never approved by the Board prior to Rust executing the Agreement with Westmore.

During the pendency of the underlying matter, the Village filed an amended third-party complaint against MED (Doc. 46). According to the Village, the MED Contract limited the role of the Village Board of Trustees to "authorizing the completion of the TIF Plan" and "authoriz[ing] [MED] to complete the TIF Process" (Doc. 46 at 3; Doc. 46-1 at 6). In Count I of the complaint, labeled constructive fraud, the Village states that MED held itself out as being "duly experienced" with the Illinois TIF Act, 65 ILCS 5/11-74.4-1, *et seq* (Doc. 46 at 4). The Village, by comparison, had no experience with the formation of TIF Districts and thus, in "reliance upon the expertise which MED represented itself to have, the Village reposed complete trust in MED" (*Id.* at 5). This, the Village claims, created a fiduciary relationship between the parties, which MED breached by inducing the Village President to execute the Redevelopment Agreement without Board approval (*Id.*). Similarly, in Count II, the Village claims that MED, through the MED Contract, owed the Village a duty of care which it later

breached by failing to alert the Village of its requirement to ensure Board approval prior to execution of the Redevelopment Agreement (*Id.* at 7).

By contrast, Count III alleges fraud. Here, the Village claims that, prior to executing the MED Contract, MED knew that that a Dollar General store had been approved for the Village (Doc. 46 at 8-9; Doc. 46-6). Despite this, MED represented that a "TIF was required to cause the development, construction and location of a Dollar General store in Coulterville" (Doc. 46 at 9). This representation, which the Village characterizes as fraudulent, was allegedly made to induce the Village to enter into the MED Contract (*Id.*).

MED has moved to dismiss the third-party complaint (Doc. 50). The Village responded (Doc. 74), and MED replied (Doc. 82). After several additional motions aimed at striking potions of the Village's complaint, the Court determined that Count III could not be impleaded under Rule 14 of the Federal Rules of Civil Procedure governing third-party practice in the federal courts (Doc. 98 at 7). However, it could be raised under the permissive joinder rule via Rule 18 (*Id.*). As a result though, should the Court determine that Counts I and II are dismissed, Count III must necessarily be dismissed (*Id.*; **see Touhy & Touhy, Ltd. v. Langeland,** No. 08 C 2950, 2009 WL 249405, at *4 (N.D. Ill. Feb. 2, 2009)). Ten days after the motion to dismiss, MED filed its motion for summary judgment (Doc. 59), to which the Village responded (Doc. 80) and MED replied (Doc. 90). Fully briefed, the Court will address the motion for summary judgment.

### B. Legal Standards

#### 1. Motion for Summary Judgment

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multiut Corp.,** 648 F.3d 506, 517

**(7th Cir. 2011) (internal quotation marks omitted), citing FED. R. CIV. P. 56(a).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).** A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* **550 U.S. 372, 380 (2007).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986), quoting FED. R. CIV. P. 56(e).** A fact is material if it is outcome determinative under applicable law. *Anderson,* **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** The non-movant "must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* **702 F.3d 916, 925 (7th Cir. 2012).** Little changes where, as here, the parties have filed cross-motions for summary judgment. "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel,* **728 F.3d 731, 734 (7th Cir. 2013) (internal quotations removed).**

2. **Constructive Fraud and Fiduciary Relationships**

Fraud can take one of two primary forms: actual and constructive fraud. *Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797, 800 (7th Cir. 2008). The *Joyce* court continued, providing a primer for constructive fraud in Illinois:

> Unlike actual fraud, constructive fraud "requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." Constructive fraud includes "any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence."

*Id.*, quoting *Pottinger v. Pottinger*, 605 N.E.2d 1130, 1138 (Ill. App. 2d. 1992). In order to make a claim of constructive fraud, a plaintiff needs to establish the existence of a confidential or fiduciary relationship, the defendant needs to then breach that fiduciary duty, know of the breach and accept the "fruits of the fraud." *Joyce*, 538 F.3d at 800, quoting *Prodromos v. Everen Secs., Inc.*, 793 N.E.2d 151, 158 (Ill. App. 4th 2003). Put another way, breach of fiduciary duty is a form of constructive fraud. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 981 N.E.2d 1069, 1078 (Ill. App. 1st 2012).[1]

3. **Negligence**

Under Illinois law, to establish a claim of negligence, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011), *citing Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Though each of the elements is necessary, the Court specifically notes that there is

---

[1] Indeed, the test for constrictive fraud accurately mirrors the test for ordinary breach of fiduciary duty under Illinois law, where a plaintiff must show that "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *nClosures Inc. v. Block & Co.*, 770 F.3d 598, 603 (7th Cir. 2014), *quoting Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013), *citing Neade v. Portes*, 739 N.E.2d 496, 502 (2000).

no tort of negligence without the breach of a duty owed. **Glade ex rel. Lundskow v. United States, 692 F.3d 718, 721-22 (7th Cir. 2012).**

C. <u>Analysis</u>

1. Count I – Constructive Fraud

As noted above, to succeed on a theory of constructive fraud, the Village needs to demonstrate a fiduciary duty, a breach of that duty, and demonstrate that MED accepted the "fruits of the fraud." As to the first element, neither party suggests that a fiduciary duty exists as a matter of Illinois law. In that situation, the fiduciary duty must be "pleaded and proved by clear and convincing evidence." **Avila v. CitiMortgage, Inc., 801 F.3d 777, 781 n.5 (7th Cir. 2015), quoting Hensler v. Busey Bank, 596 N.E.2d 1269, 1275 (1992).**

The Village relies on the MED Contract to spell out the scope of MED's fiduciary duty, which presents a problem. Under Illinois law, though it is well established that parties to a contract owe one another a duty of good faith, **Avila, 81 F.3d at 874**, citing **RBS Citizens, Nat'l Ass'n v. RTG–Oak Lawn LLC, 943 N.E.2d 198, 206–07 (2011)**, that duty does not create a fiduciary duty. **Avila, 81 F.3d at 874.** That said:

> there are some circumstances where a fiduciary relationship develops between contracting parties. Factors suggesting a fiduciary relationship include the degree of business experience between the parties, and the extent to which the allegedly subservient party entrusts the handling of his business and financial affairs to the other. To establish such a duty, one party to a contract must prove that it is heavily dependent upon the advice of the other. Mere allegations that one businessman simply trusted another to fulfill his contractual obligations is certainly not enough to establish a fiduciary relationship.

**Highway Comm. Servs., Inc. v. Midwest Trailer Repair, Inc., No. 08 CV 3445, 2011 WL 1883055, at *13 (internal citations and quotations removed).** In their complaint, the Village argues that MED held itself out as an expert on issues involving the TIF Act, while the Village itself had no previous experience. As a result, the Village "reposed complete trust in

MED" which established that the two parties had "entered into a fiduciary relationship" (Doc. 46 at 5).

MED argues that the Village, in its amended third-party complaint, never stated the scope of the fiduciary duty which MED supposedly owed as a result of the MED Contract:

> The Village's only allegation in Count I of a breach of fiduciary duty, supposedly owed by MED to the Village, appears in paragraph 30: namely,
>
>> "¶30. By instructing Rust to execute the Westmore Agreement on behalf of the Village despite its lack of approval by the Village Board, MED breached the fiduciary duty owed to the Village."

(Doc. 59 at 3, citing Doc. 46 at 5). The Village, in response to MED's motion for summary judgment, does not contest this, merely noting that the question of whether MED entered into a fiduciary relationship is a question of fact (Doc. 80 at 2-3). The Village argues that it has pleaded sufficient facts to establish the possibility of a fiduciary duty, making the analysis inappropriate on summary judgment. **Conte v. U.S. All. Fed. Credit Union, 303 F. Supp. 2d 220, 227 (D. Conn. 2004).**

Assuming, *arguendo*, that a fiduciary duty can be demonstrated (and the Court is inclined to believe no such duty can be so established), the Village cannot demonstrate breach. As noted above, the Village defines MED's alleged breach by arguing that MED instructed Rust to execute the Westmore Agreement despite its lack of approval by the Village Board" (Doc 46 at 5). It is this alleged lack of approval that is the basis for the underlying suit in this matter. However, by separate Order, the Court has already determined that the Westmore Agreement was entered into properly (Doc 102).[2] The Village cannot establish breach when MED properly instructed the Westmore and the Village to sign the Westmore Agreement. Accordingly, the Court **GRANTS** MED's motion for summary judgment as to Count I.

---

[2] Ironically, given the posture of the case, the determination of whether the Westmore Agreement is binding likely would have no impact on the outcome in the third-party complaint. If the contact is binding, as the Court finds here, then there is no breach. Alternatively, if the contract was not binding, there would be no derivative liability that could be attributed to MED.

2. Negligence

The Village's second claim is one of ordinary negligence—that MED had owed a duty of care to the Village to ensure compliance with Illinois law which it allegedly breached by failing to ensure that the Westmore Agreement was approved by the Board prior to Rust signing the document on June 7, 2011 (Doc. 46 at 7). In its motion, MED argues that the MED Contract, though clearly stating that MED will "assist the Village with all agreements and negotiations necessary to secure a Dollar General Project" (Doc. 46-1 at 9), says nothing about MED's duty to advise the Village as to following the Illinois Municipal Code, the TIF Act, or other relevant state law. As with Count I, the Village argues in response that the question as to whether a duty exists remains a question of fact, and inappropriate for a determination on summary judgment.

However, as with Count I, due to the Court's finding that the contract between Westmore and the Village is binding, even if the Village could demonstrate a duty owed by MED, the Village cannot demonstrate breach. As this is a necessary element of the claim, the Court must **GRANT** MED's motion for summary judgment as to Count II. The Court need not consider the other elements.

D. Conclusion

For the reasons stated above, the Court **GRANTS** MED's motion for summary judgment as to Counts I and II, and **DISMISSES** the two counts **with prejudice**. As noted above, the Court has already determined that the Village's third claim, arguing that MED committed fraud, cannot be properly impleaded under Federal Rule of Civil Procedure 14 and could only be included in the third-party complaint under the permissive joinder rule of Rule 18 (*see* Doc. 98 at 7). As Counts I and II have been dismissed from the action, Count III must necessarily be **DISMISSED without prejudice**.

All issues against all parties having now been addressed, the Court **CANCELS** all future settings in this action, including the October 24, 2016 Jury Trial. All pending motions are **DISMISSED as MOOT**. The Clerk of Court **SHALL ENTER JUDGMENT** in favor of MED (and against the Village), incorporate the Court's rulings in the underlying action (Doc. 102), and **CLOSE** the case.

**IT IS SO ORDERED.**

DATED:       **September 30, 2016**

**s/ Michael J. Reagan**
Michael J. Reagan
Chief Judge
United States District Court
